503 S.E.2d 1

Robert B. HARVIT, Petitioner
Below, Appellee,

v.

Stephanie HARVIT, Defendant
Below, Appellant.

No. 24484.

Supreme Court of Appeals of
West Virginia.

Submitted Feb. 17, 1998.

Decided May 18, 1998.

E. William Harvit, Shinaberry & Meade, Charleston, for Appellee.

C. Christopher Younger, Williamson, for Appellant.

## PER CURIAM: [1]

The principal question in this appeal is whether the Circuit Court of Mingo County erred in terminating the requirement that Robert B. Harvit pay his former wife, Stephanie Harvit, $1,000.00 per month in alimony. The circuit court, contrary to the recommendation of the family law master who heard the case, concluded that the financial and other circumstances of the parties had so changed that termination of the alimony was appropriate. After reviewing the record, this Court believes that it shows that Robert B. Harvit has assets over $1,000,000.00, and although his income and health have declined, the overall comparative circumstances of the parties have not so changed as to support a termination of the requirement that alimony be paid.

The parties, Stephanie Harvit and Robert B. Harvit, were divorced in 1979 after they had been married for 20 years. At the time of the divorce, the circuit court, in accordance with an agreement entered into by the parties on April 30, 1979, awarded Robert B. Harvit the bulk of the parties' assets, including a radio-station interest, stocks, bonds, and pension options. Stephanie Harvit received one-half the value of the parties' equity in a marital residence, the value of certain shares of stock, a vehicle, and an award of $1,000.00 per month alimony for so long as she remained unmarried or until her death or until the death of Robert B. Harvit.[2]

At the time of the divorce, Robert B. Harvit was suffering from multiple sclerosis, which was not then disabling. As the years passed, however, the disease became progressively worse until three of his limbs were totally paralyzed, and the fourth was substantially weakened. His financial circumstances also changed, in that his recognized income declined substantially.

Because of the change in circumstances, Robert B. Harvit instituted the present proceeding on November 10, 1993, by filing a petition in the Circuit Court of Mingo County in which he sought a modification of the 1979 divorce decree so as to terminate his alimony obligation. In his petition, he alleged that the requirement that he pay Stephanie Harvit $1,000.00 per month in alimony imposed a financial hardship upon him.

Following the filing of the petition, the matter was submitted to a family law master, and evidence was submitted which showed that at the time of the filing of the petition for termination, Robert B. Harvit's income amounted to approximately $30,000.00 per year, or $2,500.00 per month, and was principally composed of social security disability payments and payments from a private disability insurance policy. This compared with an income of approximately $132,000.00 per year when the parties were divorced. The evidence also showed that Robert B. Harvit had remarried and that his second wife had an annual income of approximately $24,000.00 per year. Apart from his income, Robert B. Harvit had some $450,000.00 in IRA and pension accounts. He had checking and savings accounts containing approximately $150,000; he owned an interest in a radio

---

1. We point out that a per curiam opinion is not legal precedent. *See Lieving v. Hadley*, 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4 (1992).

2. The agreement did not specifically provide that the circuit court could never change the alimony. Thus, the holding *of In re Estate of Hereford*, 162 W.Va. 477, 250 S.E.2d 45 (1978), does not apply. That holding recognized that under certain circumstances a non-modification provision in an agreement which was subsequently adopted by a circuit court could later preclude the court from modifying the alimony award.

station, WQTY; and he was the sole owner and stockholder of Harvit Broadcasting Corporation, the value of which Robert B. Harvit failed to disclose on the ground that he lacked information on the subject.[3]

The evidence also showed that at the time of the institution of the modification proceeding, Stephanie Harvit, who was 55 years old, was cohabiting with a long-term male companion. She was suffering from extremely high blood pressure and hyperlipidemia, and had degenerative arthritis. She was also suffering from stress and depression so severe, according to her treating psychiatrist, that she was totally disabled, or, at most, could work one or two days a week. The record demonstrated that Stephanie Harvit had limited work experience, that she had a high school education, and that she had not worked on a full-time basis. Other than her alimony, she did not have a steady income, and her only assets were an IRA account containing $8,900.00 and a Cadillac automobile on which payments were being made. Although her testimony indicated that she was basically supported by the individual with whom she cohabited, she testified that she had never received a financial gift from that individual. Further, there was no showing that he had a legal obligation to support her.

At the conclusion of the hearings, the family law master, in recommendations dated February 6, 1995, recognized that Robert B. Harvit's physical condition had deteriorated, and he found:

... That since the entry of the divorce decree, the Petitioner [Robert B. Harvit] has become totally and permanently disabled, is not ambulatory, and requires full-time nursing care. In addition, he incurs substantial medical costs, the majority of which are covered by insurance.

... That the Petitioner no longer has earned income, but receives disability insurance and Social Security in the total sum of approximately $2,500.00 per month. In addition, Petitioner's current wife receives a salary from Petitioner's businesses

in the sum of $2,000.00 per month, which she earns by virtue of the fact that Petitioner cannot receive any salary or earned income without affecting his disability insurance income.

... That the Petitioner has a current net worth of approximately 1.65 million dollars, which includes *inter alia*, real estate in Florida and West Virginia, stock in his own, as well as other, businesses, checking and savings accounts with a current total balance of $148,000.00, and a note receivable. In addition, Petitioner has a pension account worth approximately $450,000.00, but the corpus of this account is not presently available to him without affecting his other current income.

... That the Respondent [Stephanie Harvit] has not remarried, but has cohabited with an adult male since 1981 or 1982. Respondent receives the benefit of routine housing, utility and basic living expense from her cohabitant, but there is no evidence of any extraordinary or extravagant spending or benefit, and Respondent has no other assets other than her personal goods and belongings, and an IRA worth approximately $8,900.00 and a Cadillac automobile.

... That since the entry of the divorce decree, the Respondent has become totally psychiatrically disabled from employment, other than occasional part-time work, and has been diagnosed with biological depression. Respondent is not capable of earning sufficient income to support independent living, and remains dependent upon the receipt of alimony from the Petitioner.

The family law master concluded:

... That there has been a material change in the Petitioner's monthly cash flow, but the nature of his assets remains substantial and unchanged.

... That although Petitioner is totally physically disabled, his wife's income is a subterfuge for income to Petitioner, and her income from Petitioner's businesses is attributable to him.

---

3. Although the value of Harvit Broadcasting Corporation was not presented to the family law master, Robert B. Harvit's attorney, during argument before this Court, admitted that it was worth at least $500,000.00.

... That a review of the evidence and the totality of the circumstances of the parties, taking in account all of the factors to be considered by the Court with regard to modification of prior orders, fails to support the motion of the Petitioner to terminate alimony.

... That the evidence fails to prove that there has been a substantial and material change in the circumstances of the Respondent.

The family law master also concluded that Stephanie Harvit was psychiatrically disabled and could not be expected to support herself exclusive of the alimony. As a consequence, he recommended that Stephanie Harvit's alimony not be terminated. The family law master also recommended that Robert B. Harvit pay $5,000.00 for attorney's fees incurred by Stephanie Harvit in resisting the petition to terminate alimony.

The family law master's recommendations were submitted to the Circuit Court of Mingo County, and the circuit court, after reviewing the family law master's findings and recommendations, concluded that Robert B. Harvit's circumstances had changed since the divorce. Specifically, the court said:

This Court finds as a matter of fact that the financial and physical circumstances of the Petitioner [Robert B. Harvit] have substantially changed since the date of the divorce as a result of the Petitioner's severe multiple sclerosis and quadriplegic condition. The Court further finds as a matter of fact that the Respondent's physical condition has improved.

The court also found that certain of the family law master's findings of fact were clearly wrong. Specifically, the court found that the family law master's finding that the majority of Robert B. Harvit's medical costs were covered by insurance was not supported by the evidence. The court concluded that the finding that Robert B. Harvit's current spouse earned income from Robert B. Harvit's business "by virtue of the fact that petitioner [Robert B. Harvit] cannot receive any salary or earned income without affecting his disability income" was clearly wrong. Lastly, the court found that the family law master's finding that the evidence failed to show a substantial and material change in the circumstances of the parties was clearly wrong. Relating to this final point, the court noted that as a result of her cohabitation with her companion, Stephanie Harvit's financial circumstances had improved substantially because she had been relieved of all her living expenses. Under the circumstances, the court ruled that the continued payment of alimony to her was inappropriate. The court also rejected the family law master's recommendation that Robert B. Harvit pay Stephanie Harvit's attorney's fees of $5,000.00 incurred in resisting the petition to terminate alimony.

On appeal, Stephanie Harvit claims that the circuit court erred in terminating her entitlement to alimony.

The authority of a circuit court to grant or modify alimony in West Virginia is contained in West Virginia Code § 48-2-15. That statute specifically provides, in part:

(a) Upon ordering a divorce or granting a decree of separate maintenance, the court may require either party to pay alimony.... Payments of alimony are to be ordinarily made from a party's income, but when the income is not sufficient to adequately provide for those payments, the court may ... order the party required to make those payments to make them from the corpus of his or her separate estate.

The statute also provides:

(e) After the entry of an order pursuant to the provisions of this section, the court may revise the order concerning the maintenance of the parties and enter a new order concerning the same, as the circumstances of the parties may require.

In interpreting this, the Court has held that after alimony has been awarded to a petitioner seeking modification of the award, the petitioner must show that there has been substantial changes in the circumstances of the parties. *Law v. Law*, 186 W.Va. 376, 412 S.E.2d 777 (1991); *Louk v. Louk*, 184 W.Va. 164, 399 S.E.2d 875 (1990); and *Zirkle v. Zirkle*, 172 W.Va. 211, 304 S.E.2d 664 (1983). Whether there has been a substantial change in circumstances of the parties can be properly determined only af-

ter the factors set forth in Syllabus Point 2 of *Yanero v. Yanero*, 171 W.Va. 88, 297 S.E.2d 863 (1982), have been considered. That syllabus point, which dealt with W.Va.Code § 48–2–16, the predecessor of the present W.Va.Code § 48–2–15, stated:

By its terms, *W.Va.Code* § 48–2–16 [1976] requires the *circuit court to consider the financial needs of the parties, their incomes and income earning abilities and their estates and the income produced by their estates in determining the amount of alimony to be awarded in a modification proceeding.*

In reviewing the present case, the Court believes that the record demonstrates that the circuit court did not err in finding that certain of the specific findings of fact of the family law master were incorrect. For example, the circuit court's finding that the evidence did not show that Robert B. Harvit's medical costs were covered by insurance was correct. However, as indicated in *Louk v. Louk, supra, Law v. Law, supra,* and *Zirkle v. Zirkle, supra,* the central and controlling question in a modification proceeding is whether there has been a substantial change in the relative circumstances of the parties.

Although the Court believes that the record rather clearly shows that Robert B. Harvit's physical condition has substantially deteriorated and that his recognized income has declined since the time of his divorce, the facts also clearly show that his estate has increased substantially and that he now has an estate worth in excess of $1,000,000.00.

While having substantial bearing on the question of whether alimony should be terminated, the parties' physical condition and income are not the sole factors controlling whether an alimony award should be modified or terminated. As noted previously, West Virginia Code § 48–2–15 requires that the estates of the parties, and the income earning abilities of the estates, be considered in an alimony modification proceeding. The same statute also indicates that if a party's income is inadequate to support the payment of alimony, the trial court may order the payment out of the corpus of the estate. Although the record suggests that the de-

cline in Robert B. Harvit's recognized income has negatively affected his ability to pay alimony, and while his physical decline inevitably affects his earning capacity, his estate is certainly adequate to pay $1,000.00 per month without substantial diminution.

On the other hand, Stephanie Harvit has no legally certain income; her health is precarious; and her earning ability is limited.

As indicated in Syllabus Point 1 of *Stephen L.H. v. Sherry L.H.*, 195 W.Va. 384, 465 S.E.2d 841 (1995):

A circuit court should review findings of fact made by a family law master only under a clearly erroneous standard, and it should review the application of law to the facts under an abuse of discretion standard.

And as indicated in Syllabus Point 3 of the same case:

Under the clearly erroneous standard, if the findings of fact and the inferences drawn by a family law master are supported by substantial evidence, such findings and inferences may not be overturned even if a circuit court may be inclined to make different findings or draw contrary inferences.

While certain of the findings of fact of the family law master in the present case were clearly erroneous, and the circuit court properly set them aside, the remaining facts support the ultimate conclusion of the family law master that the circumstances of the parties had not so changed as to justify a termination of Robert B. Harvit's alimony obligation. In light of this, the Court believes that the circuit court erred in terminating that obligation.

Although the record does not definitely show what the worth of Harvit Broadcasting Corporation is, and although under other circumstances the Court would possibly remand this matter for the taking of evidence on this question, here, where there was a statement in open court that the corporation was worth at least $500,000.00, the Court believes that the interest of judicial economy dictates that the termination of the alimony be set aside.

**152**

On appeal, Stephanie Harvit also claims that the circuit court erred in refusing to require Robert B. Harvit to pay her attorney's fees.

■ As a general rule, a trial court has discretion to award attorney fees and costs in a proceeding involving the modification of an alimony obligation. *Goff v. Goff,* 177 W.Va. 742, 356 S.E.2d 496 (1987). Further, in divorce-type proceedings, a trial court's rulings, as to counsel fees, should not be disturbed by this Court unless it appears that the trial court abused its discretion. *Rogers v. Rogers,* 197 W.Va. 365, 475 S.E.2d 457 (1996); *Hinerman v. Hinerman,* 194 W.Va. 256, 460 S.E.2d 71 (1995); *Cummings v. Cummings,* 170 W.Va. 712, 296 S.E.2d 542 (1982).

■ In *Hillberry v. Hillberry,* 195 W.Va. 600, 466 S.E.2d 451 (1995), this Court stated that the principal inquiry in determining whether to compel one party in a divorce action to pay attorney's fees and costs to the other party is whether the financial circumstances of the parties dictate that the award of attorney's fees is necessary.

■ In the present case where the evidence shows that Robert B. Harvit has assets in excess of $1,000,000.00, whereas Stephanie V. Harvit has assets which appear to be substantially less than $100,000.00, and where Robert B. Harvit has approximately $30,000.00 per year in income, and Stephanie V. Harvit has essentially no steady income apart from her alimony, the Court believes that an award of attorney's fees to Stephanie Harvit is appropriate.

For the reasons stated, the judgment of the Circuit Court of Mingo County is reversed, with directions that the alimony obligation be continued. The Court also concludes that Robert B. Harvit should pay Stephanie Harvit's attorney's fees in this case.

The judgment of the circuit court is, therefore, reversed, and this case is remanded for further proceedings, consistent with what is stated above.

Reversed and remanded.

DAVIS, C.J., and MAYNARD, J., deeming themselves disqualified, did not participate in the decision of this case.

ALSOP, Judge, sitting by temporary assignment.