IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2013 Term

_____

No. 11-0998

_____

FILED

March 28, 2013
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

MARY BETH COCHRAN,
Respondent Below, Petitioner

v.

MARK IAMS COCHRAN,
Petitioner Below, Respondent

_____

Appeal from the Circuit Court of Wetzel County
The Honorable Mark A. Karl, Judge
Civil Action No. 07-D-108

REVERSED AND REMANDED WITH DIRECTIONS

_____

Submitted: February 5, 2013
Filed: March 28, 2013

Jo Lynne Nugent, Esq.                 Kevin L. Neiswonger, Esq.
Sheehan & Nugent, PLLC                Neiswonger and White
Wheeling, West Virginia              Moundsville,West Virginia
Counsel for the Petitioner           Counsel for the Respondent

The Opinion of the Court was delivered PER CURIAM.

SYLLABUS BY THE COURT

1.      "In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*." Syl., *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004).

2.      "In divorce actions, an award of attorney's fees rests initially within the sound discretion of the family [court] and should not be disturbed on appeal absent an abuse of discretion. In determining whether to award attorney's fees, the family [court] should consider a wide array of factors including the party's ability to pay his or her own fee, the beneficial results obtained by the attorney, the parties' respective financial conditions, the effect of the attorney's fees on party's standard of living, the degree of fault of either party making the divorce action necessary, and the reasonableness of the attorney's fee request." Syl. pt. 4, *Banker v. Banker*, 196 W. Va. 535, 474 S.E.2d 465 (1996).

Per Curiam:

Petitioner Mary Beth Cochran appeals the May 28, 2011, order of the Circuit Court of Wetzel County that reversed the April 23, 2009, order of the Family Court of Wetzel County. On appeal, the petitioner asks this Court to reinstate the family court's order which awarded her spousal support of $500 a month for 36 months; ruled that Respondent Mark Iams Cochran must pay her $80,390.67 in equitable distribution; provided an "in-kind" debt payment plan wherein the petitioner is to reimburse the respondent one-half of any debt payments made to the respondent's mother in connection with a loan secured by the marital residence within 10 days of the respondent's presentment of the cancelled check(s) for the payment; and awarded her attorney fees of $18,425.12. The petitioner also requests that she be awarded attorney fees and costs for the appeal process in the circuit court and this Court. For the reasons set forth in this opinion, we grant the petitioner the relief which she seeks.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Mary Beth Cochran and Respondent Mark Iams Cochran were married in September 2005. The respondent was employed as a maintenance mechanic and earned about $99,109.13 in 2006.[1] The petitioner was employed by the county board

---

[1] This is the year-to-date total income listed on the respondent's December 18, 2006, pay stub.

1

of education as a payroll supervisor and earned $47,255.00 in 2007. At the time of the marriage, the petitioner owned a brick ranch house in "one of the better areas" of New Martinsville which, had she kept it, would have been paid off in 2008. The respondent owned a farm house adjacent to his mother's property in which he lived.

In the summer of 2005, the petitioner and her daughter moved into a house, adjacent to the petitioner's farm house, which was owned by the respondent's mother, Ruth Ann Cochran. The petitioner refers to this house as the "rental unit." After the parties were married, they began renovating the rental unit which they planned to use as the marital home. In order to raise money for the renovation, the petitioner sold her house which resulted in a net profit to her of $70,000. Ultimately, $60,000 of this money was expended on the renovation of the rental unit. The respondent testified below that he spent $116,246.93 of his separate funds on the construction costs of the marital real estate. Apparently the respondent's mother transferred this property to the parties for no consideration.

The respondent's mother also loaned the parties $125,000, to be used in the renovation of the marital home. The parties deposited this money in a construction account. Prior to signing the note and a deed of trust for the loan,[2] the petitioner consulted with an attorney who explained to her that the $125,000 was a loan and not a gift as

---

[2] The $125,000 loan was secured by the real estate being renovated by the parties.

2

originally understood by the petitioner. In October 2006, the respondent's mother executed the first codicil to her will which provided that any balance of the $125,000 loan that was still due and owing on her death would be forgiven.[3]

After the parties married, they never moved into the same household. The parties maintained a relationship as husband and wife for about 17 months until mid-February 2007, at which time the parties separated. In May 2007, the petitioner filed a petition for divorce, but it was dismissed shortly thereafter on the motion of the petitioner. In her motion to dismiss the divorce petition, the petitioner cited the fact that the parties were attempting reconciliation. In June 2007, the respondent filed for divorce on the basis of irreconcilable differences. Apparently, after the petitioner's divorce action was dismissed, but before the respondent's divorce action was filed, the respondent's mother amended her will to remove the provision that forgave the $125,000 loan to the parties upon her death.

Pursuant to the respondent's divorce petition, in its April 23, 2009, order, the Family Court of Wetzel County granted the marital real estate to the respondent. Significant to the instant appeal, the family court ruled:

---

[3] The mother's will, dated prior to her transferring the real estate to the parties, left everything to the respondent except her household goods and furnishings.

16. The wife should be obligated to reimburse one-half of all debt payments made to husband's mother, within 10 days of presentation of each respective monthly cancelled check.[4]

. . . .

18. To achieve equitable division the husband shall pay unto the wife eighty thousand three hundred ninety and 67/100 ($80,390.67) dollars. The Court should retain subject matter jurisdiction to enter a schedule of payment should the same not be paid within ninety (90) days of the entry of this Order. The entirety of such amount is subject to judicial interest.

. . . .

20. The Court concludes that a rehabilitative award of spousal support in the amount of Five Hundred and 00/00 ($500.00) dollars per month is warranted, retroactive to the filing of this action for a total period of thirty [sic] (36) months.

. . . .

23. Considering the disparate incomes of the parties which has been apparent throughout the parties' marriage, the [respondent] should be required to reimburse the [petitioner] for her attorney's fees.

24. The amount of $18,425.12 shall be considered as "reasonable," absent an objection to counsel's affidavit within ten (10) days of the entry of this Order.

25. The Costs of this case are assessed unto the [respondent].

(Footnote added.).

The respondent subsequently appealed the family court's order to the circuit court and raised three assignments of error. First, the respondent alleged error in the family court's award of spousal support to the petitioner. Second, the respondent assigned as error the family court's award of attorney fees to the petitioner. Finally, the

---

[4] The family court found that the $125,000 conveyance from the respondent's mother to the parties was a loan which constituted marital debt. The family court ordered each party to pay one half of the payment on the loan for the next twenty years.

respondent contended that the family court erred in awarding an "in kind" equal payment of the debt secured by the marital property while requiring the husband to make an up-front equitable distribution payment to the petitioner.

The circuit court, in its May 28, 2011, order, reversed the family court with regard to spousal support after finding that the factors considered in awarding spousal support set forth in W. Va. Code § 48-6-301 (2001) weigh in favor of the respondent. The circuit court concluded that the respondent had paid alimony of $500 a month for 25 months which amounted to a total of $12,500 paid. Accordingly, the circuit court ruled that this amount should be deducted from the equitable distribution payment that the respondent was to pay to the petitioner.

Second, the circuit court reversed the family court's award of attorney fees to the petitioner. In doing so, the circuit court found that the petitioner had the financial ability to pay her own attorney fees. Also, the circuit court found that the short duration of the marriage and the fact that the parties were never dependent upon one another indicated that lengthy litigation was not necessary. The circuit court further found that the length of the litigation was the fault of the petitioner for positing that the $125,000 was a gift from the respondent's mother rather than a loan despite clear evidence to the contrary.

Finally, the circuit court reversed the family court's decision regarding the "in kind" repayment of the loan from the respondent's mother. Specifically, the circuit court stated:

> The Family Court acknowledged in its final order of divorce that this is not customarily the way Courts are to perfect equitable distribution. Normally, when a marital asset is assigned to one individual, the liability for that asset is also assigned to that individual in order to perfect equitable distribution.

As a result, the circuit court ordered that the petitioner's repayment of her half of the $125,000 loan be deducted from the respondent's payment of $80,390.67 to the petitioner. As noted above, the circuit court also ordered that the $12,500 which it found to be improperly paid in spousal support to the petitioner was to be deducted from the $80,390.67 payment. Accordingly, the circuit court found that the respondent is to pay the petitioner $5,390.67, which is the sum remaining after the petitioner's repayment of her half of the $125,000 loan and the $12,500 in paid spousal support payments are deducted from the $89,390.67.

The petitioner now appeals the circuit court's order to this Court.

## II. STANDARD OF REVIEW

In this case, the petitioner appeals the circuit court's order that reversed portions of the order of the family court. With regard to this Court's standard of review, we have held:

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final

order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

Syl., *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d. 803 (2004). Because the issues in the instant case essentially involve the family court's application of the law to the facts, we will review the family court's order for an abuse of discretion. With regard to what constitutes an abuse of discretion, this Court has explained that "[u]nder the abuse of discretion standard, we will not disturb a [family] court's decision unless the [family] court makes a clear error of judgment or exceeds the bound of permissible choices in the circumstances." *Wells v. Key Communications, L.L.C.*, 226 W. Va. 547, 551, 703 S.E.2d 518, 522 (2010) (citation omitted). This Court also has articulated that "[i]n general, an abuse of discretion occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed but the [family] court makes a serious mistake in weighing them." *Shafer v. Kings Tire Service, Inc.*, 215 W. Va. 169, 177, 597 S.E.2d 302, 310 (2004) (citation omitted). Finally, we have indicated that "a [family] court necessarily abuses its discretion if it bases its ruling on an erroneous assessment of the evidence or an erroneous view of the law." *Beto v. Stewart*, 213 W. Va. 355, 359-360, 582 S.E.2d 802, 806-807 (2003) (citation omitted). With this standard to guide us, we now proceed to consider the issues raised by the petitioner.

## III.  DISCUSSION

### 1. Payment of Spousal Support

The petitioner's first assignment of error is that the circuit court erred in reversing the family court's order that the respondent pay her spousal support in the amount of $500 a month for 36 months. According to the petitioner, the circuit court used the wrong standard of review and substituted its findings for those of the family court.[5] The petitioner further opines that the parties had disparate incomes and the respondent was left after the marriage with the marital home while the petitioner had to find another place to live. Finally, the petitioner asserts that the spousal support was properly rehabilitative due to the fact that she had to pay rent during the parties' separation.

The respondent replies that the circuit court did not err in reversing the family court's order with regard to the payment of spousal support. The respondent states that W. Va. Code § 48-6-301 sets forth the statutory factors that are to be considered by a court in determining whether to make an award of spousal support, and almost every factor weighs in favor of the respondent in this case.[6]

---

[5] The petitioner points to the circuit court's finding that the award of rehabilitative spousal support was "clearly erroneous" as proof that the circuit court applied the wrong standard of review. The proper standard of review is found in W. Va. Code § 51-2A-14(c) (2001), which provides that "the circuit court shall review the findings of fact made by the family court judge under the clearly erroneous standard and shall review the application of law to the facts under an abuse of discretion standard."

[6] The issue of spousal support is governed by W. Va. Code § 48-6-301(b) (2001), which provides:
(continued . . .)

(b)     The court shall consider the following factors in determining the amount of spousal support . . . if any[:]

(1) The length of time the parties were married;

(2) The period of time during the marriage when the parties actually lived together as husband and wife;

(3) The present employment income and other recurring earnings of each party from any source;

(4) The income-earning abilities of each of the parties, based upon such factors as educational background, training, employment skills, work experience, length of absence from the job market and custodial responsibilities for children;

(5) The distribution of marital property to be made under the terms of a separation agreement or by the court . . . insofar as the distribution affects or will affect the earnings of the parties and their ability to pay or their need to receive spousal support . . .;

(6) The ages and the physical, mental and emotional condition of each party;

(7) The educational qualifications of each party;

(8) Whether either party has foregone or postponed economic, education or employment opportunities during the course of the marriage;

(9) The standard of living established during the marriage;

(10) The likelihood that the party seeking spousal support . . . can substantially increase his or her income-earning abilities within a reasonable time by acquiring additional education or training;

(11) Any financial or other contribution made by either party to the education, training, vocational skills, career or earning capacity of the other party;

(12) The anticipated expense of obtaining the education and training described in subdivision (10) above;

(13) The costs of educating minor children;

(14) The costs of providing health care for each of the parties and their minor children;

(15) The tax consequences to each party;

(16) The extent to which it would be inappropriate for a party, because said party will be the custodian of a minor child or children, to seek employment outside the home;

(17) The financial need of each party;

(continued . . .)

In reversing the family court's grant of spousal support, the circuit court found, in part, that

> the [petitioner] has had the same source of employment for over 30 years and was never dependent upon the [respondent's] income for support. The parties lived separate economic lives, and the award of "rehabilitative" spousal support is clearly erroneous. None of the statutory factors weigh in favor of the [petitioner]. In essence, nothing existed that needed rehabilitated.

After carefully reviewing the facts of this case and the factors governing spousal support in W. Va. Code § 48-6-301(b), this Court concludes that the family court did not abuse its discretion in awarding spousal support to the petitioner.

First, we find that the family court should not have designated the spousal support awarded to the petitioner as "rehabilitative."[7] As recognized by the circuit court,

---

> (18) The legal obligations of each party to support himself or herself and to support any other person;
> (19) Costs and care associated with a minor or adult child's physical or mental disabilities; and
> (20) Such other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable grant of spousal support. . . .

[7] According to W. Va. Code § 48-8-101(b) (2001), "[s]pousal support is divided into four classes which are: (1) Permanent spousal support; (2) temporary spousal support, otherwise known as spousal support pendente lite; (3) rehabilitative spousal support; and (4) spousal support in gross." West Virginia Code § 48-8-105(a) (2001), provides:

> The court may award rehabilitative spousal support for a limited period of time to allow the recipient spouse, through reasonable efforts, to become gainfully employed. When awarding rehabilitative spousal support, the court shall make

(continued . . .)

10

the petitioner had a steady income and had been self-supportive for many years. As a result, the statutory factors do not support an award of rehabilitative spousal support. However, this does not mean that the statutory factors do not support an award of spousal support of any kind.[8]

According to W. Va. Code § 48-6-301(b)(5), when determining whether to grant spousal support, a family court shall consider the distribution of marital property insofar as the distribution affects the need of a party to receive spousal support. Also, W. Va. Code § 48-6-301(b)(17), provides that a family court shall consider the financial need of each party. Finally, pursuant to W. Va. Code § 48-6-301(b)(20), a family court shall consider other factors as the court deems necessary or appropriate to consider in order to

---

specific findings of fact to explain the basis for the award, giving due consideration to the factors set forth in section 8-103 [§ 48-8-103] of this article. An award of rehabilitative spousal support is appropriate when the dependent spouse evidences a potential for self-support that could be developed through rehabilitation, training or academic study.

Clearly, the spousal support awarded to the petitioner by the family court does not qualify as rehabilitative spousal support. However, for the reasons stated above, it does qualify as proper temporary spousal support under the factors set forth in W. Va. Code § 48-6-301(b).

[8] On the second page of the family court's order, the family court did not refer to the spousal support as "rehabilitative" but rather stated, "ORDERED, ADJUDGED, and DECREED the husband shall pay spousal support in the amount of Five Hundred and 00/00 dollars per month, retroactive to the date of filing of this action for a total period of thirty six (36) months. . . .

arrive at a fair and equitable grant of spousal support. The family court properly considered these factors in awarding the petitioner spousal support.

The evidence indicates that the petitioner owned a brick ranch house in one of the better areas of town which, had she kept it, would have been paid off in 2008. Nevertheless, the petitioner sold her home and made a profit of approximately $70,000. She then expended $60,000 on the renovation of the parties' marital home. Because the respondent was awarded ownership of the marital real estate in the divorce, the petitioner had to obtain a place to live upon the parties' separation. The family court found in its final divorce order that the petitioner pays rent in the amount of $500 a month. The family court further found that the petitioner earned $3,937.92 a month in 2007 and testified to having monthly expenses of $4,365.99, roughly $500 less than required to meet her monthly expenses. As a result of the distribution of the marital property and the parties' relative financial positions, the family court found it fair and equitable to award to the petitioner $500 a month in spousal support for a temporary period to aid the petitioner in paying rent. We find that the family court was within in discretion in so ruling.[9]

---

[9] The circuit court found that the fact the petitioner will receive a sizable equitable distribution payment supports not awarding spousal support to the petitioner. However, as a result of the circuit court's rulings, the petitioner was to receive only $5,390.67 in equitable distribution.

## 2. Equitable Distribution and Repayment of Loan

The petitioner asserts that the circuit court erred in reversing the family court's order of an "in-kind" payment on the remaining marital debt of $123,798.75 owed to the respondent's mother and a cash payment by the respondent to the petitioner of $80,390.67. The petitioner posits that these rulings are proper and that the circuit court cited no law in reversing the family court.

The respondent counters that the family court's ruling was an abuse of discretion. According to the respondent, the family court held that the value of the real estate was $129,000 and the indebtedness associated with the real estate was $123,798.75. However, instead of calculating the equity in the marital residence and factoring it in with the other assets and debts, the family court assigned the entire value of the house to the respondent as if there was no loan. The family court then ordered the respondent to pay to the petitioner a lump sum that reflected equity in the marital residence that did not yet exist, and directed the parties to make equal payments on the loan to the respondent's mother. This essentially resulted in the respondent being ordered to pay an up-front payment to the petitioner for one-half the value of the unencumbered real estate when it was, in fact, encumbered. The respondent concludes that the family

court clearly abused its discretion in requiring him to pay for equity in the marital home that did not yet exist.[10]

This Court concludes that the family court did not abuse its discretion in ordering the respondent to pay $80,390.67 to the petitioner in equitable distribution and in ordering an in-kind repayment of the $125,000 loan. With regard to the $80,390.67 payment, the family court set forth the required findings of fact and conclusions of law to support its equitable distribution of the marital property. Also, the circuit court cited no law and this Court is aware of none which prohibits the family court's method of equitable distribution under the specific facts of this case.

---

[10] In its conclusions of law supporting its reversal of the family court on this issue, the circuit court found:

> 1. Accordingly, the Court concludes that the Family Court incorrectly ordered the [respondent] to make an "up front" payment of equity in the marital residence that does not and will not exist in the martial [sic] residence until the deed of trust is paid off.
> 2. Accordingly, the Court concludes that the Family Court erred in making such an "in kind" division and in ordering such an "in kind" repayment of the martial [sic] debt.
> 3. The Court further concludes that the equitable distribution payment to be made from the [respondent] unto the [petitioner] should be reduced by ½ of the amount of the loan to be assumed by the [respondent] for the repayment of the loan unto the [respondent's] mother.

Further, we find that the family court did not abuse its discretion in ordering the in-kind repayment of the loan to the respondent's mother. The evidence below indicates that the $125,000 loan to the parties certainly was not an arms–length transaction. Significantly, the respondent's mother originally indicated in her will that any balance of the $125,000 loan that was still due and owing on her death would be forgiven. Apparently, after the petitioner's divorce petition was dismissed and before the respondent filed his divorce petition, the respondent's mother removed the debt forgiveness provision from her will. These circumstances raise a legitimate concern that after the parties' divorce, the petitioner would be required to pay her half of the $125,000 loan while the respondent's mother would forgive her son's half of the loan. If this were to occur, the respondent would be placed in an advantageous financial position at the expense of the petitioner. In light of these circumstances, we conclude that the family court was within its sound discretion in ordering the in-kind repayment of the loan.

### 3. Attorney Fees

Finally, the petitioner avers that the circuit court erred in reversing the family court's award of attorney fees to the petitioner in the amount of $18,425.12. According to the petitioner, the circuit court addressed only one of the relevant factors in its consideration of this issue whereas the family court considered all the factors and properly awarded her attorney fees. The petitioner further asserts that the fees were reasonable in light of the litigation needed to untangle the parties' financial circumstances

15

such as the value of the marital home, equitable distribution, and the respondent's premarital credit card debt and investments.

The respondent answers that the circuit court did not err in reversing the family court's order with regard to the award of attorney's fees. According to the respondent, the evidence clearly demonstrated that the petitioner had the ability to pay her own attorney's fees, the petitioner never relied on the husband's income, the parties never resided together, both parties were always responsible for the payment of their own debts and expenses, and the marriage lasted a mere 17 months. Finally, the circuit court obviously believed that some of the litigation was not necessary and that the petitioner litigated some issues in bad faith.

The family court based its award of attorney fees to the petitioner on the disparate incomes of the parties.[11] Our law on the award of attorney fees in divorce

---

[11] In reversing the award of attorney fees, the circuit court found as follows:

> 1. The parties were married for a mere seventeen months.
> 2. The [petitioner] filed a significant amount of discovery requests and pleadings, which required the [respondent] to produce a vast number of documents.
> 3. Despite lengthy litigation, the [petitioner] ultimately agreed to stipulate to a significant majority of the financial disclosures initially made by the [respondent] at the outset of the litigation. Had this been done initially, lengthy litigation could have been avoided.
> 4. The [petitioner] has been employed with the Wetzel County Board of Education for a period of over 30 years. At

(continued . . .)

actions is well settled. In syllabus point 4 of *Banker v. Banker*, 196 W. Va. 535, 474

S.E.2d 465 (1996), this Court held:

> In divorce actions, an award of attorney's fees rests initially within the sound discretion of the family [court] and should not be disturbed on appeal absent an abuse of discretion. In determining whether to award attorney's fees, the family [court] should consider a wide array of factors including the party's ability to pay his or her own fee, the beneficial results obtained by the attorney, the parties' respective financial conditions, the effect of the attorney's fees on each party's standard of living, the degree of fault of

---

> the time of the divorce proceeding, the [petitioner's] yearly income was $47,255.00 per year.
>
> 5. The [petitioner] was never dependent on the [respondent's] income.
>
> 6. The Court also notes that the [petitioner's] financial disclosures indicate a pre-marital inheritance of PPG Stock; a premarital inheritance of Harley Davidson Stock; several premarital owned vehicles; and pre-marital funds in the amount of $60,000.00 which were ultimately invested into and created equity in the marital residence out of which the [petitioner] will receive a settlement.
>
> 7. The Court finds that the [petitioner] had the financial ability to pay her own attorney fees.
>
> 8. The Family Court specifically pointed out that the significant majority of the litigation involved the [petitioner's] allegation that the loan secured by the marital residence was not her responsibility and was not a marital debt. This Court agrees that this issue was the most highly contested. The [petitioner] refused to acknowledge that the loan made by the [respondent's] mother was a valid loan and she maintained that it was a gift and not a debt. However, the evidence clearly demonstrated that she was incorrect and should have known this fact since she signed a promissory note with the advice of an attorney. The Court finds that a vast majority of the litigation could have been avoided had the [petitioner] not taken this position.

either party making the divorce action necessary, and the reasonableness of the attorney's fee request.[12]

(Footnote added.). Application of this law to the instant facts compels the conclusion that the family court's award of attorney fees does not constitute a clear abuse of discretion. The family court based the award on the disparity in the parties' incomes which certainly is a sound reason to award attorney fees in divorce cases. *See, e.g.*, *Mayle v. Mayle*, 229 W. Va. 179, 727 S.E.2d 855 (2012) (finding that issue of attorney fees turned on the disparity in the parties' incomes and that lower court abused its discretion in failing to

---

[12] According to W. Va. Code § 48-5-611 (2001), which governs the award of costs and attorney fees in divorce actions:

> (a) Costs may be awarded to either party as justice requires, and in all cases the court, in its discretion, may require payment of costs at any time and may suspend or withhold any order until the costs are paid.
> (b) The court may compel either party to pay attorney's fees and court costs reasonably necessary to enable the other party to prosecute or defend the action. An order for temporary relief awarding attorney's fees and court costs may be modified at any time during the pendency of the action, as the exigencies of the case or equity and justice may require, including, but not limited to, a modification which would require full or partial repayment of fees and costs by a party to the action to whom or on whose behalf payment of such fees and costs was previously ordered. If an appeal be taken or an intention to appeal be stated, the court may further order either party to pay attorney fees and costs on appeal.
> (c) When it appears to the court that a party has incurred attorney's fees and costs unnecessarily because the opposing party has asserted unfounded claims or defenses for vexatious, wanton or oppressive purposes, thereby delaying or diverting attention from valid claims or defenses asserted in good faith, the court may order the offending party, or his or her attorney, or both, to pay reasonable attorney's fees and costs to the other party.

award attorney fees); *Harvit v. Harvit*, 202 W. Va. 147, 152, 503 S.E.2d 1, 6 (1998) (stating that "the principal inquiry in determining whether to compel one party in a divorce action to pay attorney's fees and costs to the other party is whether the financial circumstances of the parties dictate that the award of attorney's fees is necessary"); *Landis v. Landis*, 223 W. Va. 325, 674 S.E.2d 186 (2007) (finding that party with substantial income is in better position to absorb cost of attorney fees); *Grose v. Grose*, 222 W. Va. 722, 671 S.E.2d 727 (2008) (finding no abuse of discretion in awarding attorney fees where one party had substantially more income and other party had a need for award of attorney fees). In the instant case, the family court found that the petitioner earned about $47,255.00 in 2007, and the respondent earned about $99,109.13 in 2006. Also, the petitioner testified below that her monthly living expenses exceeded her monthly income. Based on this substantial difference in the parties' annual incomes and the petitioner's financial need, we conclude that it was within the sound discretion of the family court to award attorney fees to the petitioner.[13]

In sum, after carefully reviewing the specific circumstances of this case and the applicable law, this Court is unable to conclude that the family court made an error of law, exceeded the bound of permissible choices, ignored a material factor, relied upon an improper factor, or wrongly weighed the factors in making its decision. While the circuit

---

[13] Considering the circumstances surrounding the $125,000 loan to the parties, this Court does not believe that it was unreasonable for the petitioner to litigate this issue.

19

court would have weighed the factors differently and reached a different result, it is not the role of the circuit court to substitute its own findings for those of the family court where the family court has not clearly abused its discretion.

Finally, the petitioner requests that this Court award her attorney fees for the appeal process retroactive to the date she filed her Motion for Additional Attorney Fees which was docketed on July 11, 2009. We grant the petitioner's request and order the respondent to pay the petitioner's reasonable attorney fees incurred in defending the respondent's appeal in the circuit court and in prosecuting her own appeal in this Court. In the event that the parties are unable to agree on the amount of reasonable attorney fees, the family court upon application of either party should conduct a hearing to determine the amount of such fees.

### IV. CONCLUSION

Based on the foregoing, the May 28, 2011, order of the Circuit Court of Wetzel County is reversed, and this matter is remanded with directions that the April 23, 2009, order of the Family Court of Wetzel County be reinstated.

Reversed and remanded with directions.

20