IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**ROBERT K.,**
**Petitioner Below, Petitioner**

FILED
**February 3, 2026**
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.)  No. 25-ICA-203**        (Fam. Ct. Harrison Cnty. Case No. FC-17-2021-D-303)

**ELIZABETH K.,**
**Respondent Below, Respondent**

**MEMORANDUM DECISION**

Petitioner Robert K.[1] ("Father") appeals the Family Court of Harrison County's April 14, 2025, order awarding Respondent Elizabeth K. ("Mother") attorney fees that she incurred defending Father's petition to modify custodial allocation. Mother and the children's guardian ad litem ("GAL") filed responses in support of the family court's order.[2] Father filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the family court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The parties are divorced and share two daughters and a son, ages nine, eleven, and twelve. On April 4, 2022, the family court entered a final divorce order that adopted the parties' agreed parenting plan, providing the parties equal custodial allocation of the children, following a 2-2-3 parenting schedule, and joint decision-making authority for all the children's major decisions.

On August 16, 2024, Father filed a petition to modify the April 4, 2022, order. In his petition, Father sought a change in decision-making for all three children and for the oldest child, the only son, to reside primarily with him. Father also requested a recalculation

---

[1] To protect the confidentiality of the juveniles involved in this case, we refer to the parties' last name by the first initial. *See, e.g.*, W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] Father is represented by Teresa M. Samuels, Esq. Mother is represented by Alyson A. Dotson, Esq. The children's GAL is Michelle L. Bechtel, Esq.

1

of child support. Father sought no custodial modification pertaining to the parties' daughters. Specifically, Father asserted that the relationship between Mother and the son was hostile, that son attended mental health counseling due to his strained relationship with Mother, and that Mother had not attempted to mend their strained relationship since the entry of the April 4, 2022, order to son's detriment. Father also maintained that the parties' coparenting relationship was difficult and frustrating, alleging that Mother made unilateral major decisions for the children without his knowledge, harassed him continuously in person and by text messages, and disparaged him to others in the community, which resulted in public verbal altercations in the presence of the children.

On September 19, 2024, Father filed an amended petition for modification, asserting that Mother's relationship with the son had further deteriorated since the filing of his August 16, 2024, petition for modification. Father alleged that Mother had escalated physical altercations with the son and continued to invite conflict with the son in public and in private, which resulted in Father having safety concerns for the son.

Also on September 19, 2024, Father filed an emergency motion for ex parte relief, asserting that because of Mother's behavior, he feared for their son's wellbeing while in her care. Father alleged that Mother regularly used inappropriate, abusive speech to and in front of the children, initiated screaming matches with Father at the children's extracurricular events in front of the children, spat in Father's face at one of those events, and smelled strongly of alcohol on September 11, 2024, during an 8:00 a.m. exchange of the son's football gear. Father further alleged that Mother had kicked the son out of her home for three months and that the son had since expressed a desire to no longer live with or visit Mother. In support of his emergency motion, Father maintained that he feared Mother would retaliate against the children for disclosing the above information. By order entered September 19, 2024, the family court scheduled a telephonic hearing on Father's petitions for October 24, 2024.

On September 30, 2024, Mother filed an answer to Father's amended petition for modification and his emergency motion for ex parte relief. Mother also filed a counter-petition for modification and motion for attorney fees on that same date. Mother denied smelling of alcohol, asserted that she did not have custody of the children during the September 11, 2024, football gear exchange, and stated that Father was the person who initiated the screaming matches and refused to leave her alone when the parties interacted. In her counter-petition, Mother asserted that substantial changes in circumstances had occurred since the entry of the April 4, 2022, order that would justify a modification of the parenting plan regarding joint-decision making authority for the minor children. Mother contended that Father refused to communicate and to co-parent with her and that Father relocated and failed to notify Mother of his move.

On October 24, 2024, the family court held an initial hearing on Father's amended petition for modification by telephone. By scheduling order entered October 25, 2024, the

court scheduled a final, seven-hour hearing on the parties' petitions for February 24, 2025, and allotted each party three and a half hours to present their case and cross-examine witnesses.

On October 28, 2024, the family court entered an order appointing a GAL for the children. The order required the GAL to fully investigate the matter and to submit a written report on or before the February 24, 2025, final hearing. The court also required that $2,800.00 be deposited in the circuit clerk's office prior to the commencement of the GAL's investigation. By separate order entered on November 15, 2024, the family court required Father to deposit the $2,800.00 to the circuit clerk for the GAL. The court also ordered the parties to schedule and attend appointments for parental fitness evaluations at Psychological Associates with Dr. Edward Baker and required Father to pay for both parties' parental fitness evaluations.

By letter dated February 3, 2025, Dr. Baker informed the family court that after evaluating the parents, he opined that they should have equal custody of the children and recommended that Mother have family therapy with the son if their issues were not resolved. Dr. Baker stated that his recommendation was based solely on the interviews and testing of both parents and a review of the records. Dr. Baker noted that the family court may have other information that could lead it to a different conclusion.

On February 21, 2025, the GAL filed her investigative report. The GAL stated that she interviewed Mother at the GAL's office on December 16, 2024, interviewed Father via Zoom on December 18, 2024, met with the son at his school on January 30, 2025, and met with the two younger children at their school on January 31, 2025. To assist in her investigation, the GAL also stated that she reviewed the court file, school records, Mother's video recordings, Dr. Baker's evaluations of the parties, and the son's counseling records. Her report did not state whether any child had expressed a custodial preference during her investigation. The GAL stated that the son was avoidant and told her that he "did not really want to talk" to her, "and was just thinking about math." The GAL articulated that the older daughter expressed that Mother does not get along with the son, the parties do not get along with each other, that she wants her mom out of her business, and that she wants a parenting plan with less exchanges. The younger daughter told the GAL that Mother is "kind of mean," that Mother and the son yell at each other, and that she would like a week on/week off parenting exchange.

Pursuant to her investigation, the GAL recommended that equal custodial allocation remain unchanged but encouraged the parties to consider switching to a week on/week off schedule to minimize their interactions. The GAL noted that she emailed the parties her informal recommendation on February 11, 2025, and that her recommendation had not changed. She also stated that while she expected the son to express a custodial preference, he did not do so. The GAL explained that her recommendation was due to the likelihood

that the parties would see the children during the other parent's parenting time because of the children's heavy involvement in extracurricular activities.

On February 23, 2025, a day before the final hearing was scheduled to begin, Father filed a motion requesting the family court to permit an in-camera interview of the son, as he was the primary subject of the modification. Father asserted that the son was an essential witness as he was the only one with direct knowledge of certain matters at issue, was mature for his age, and because the issues raised primarily impacted and affected the children, the son should be given the opportunity to speak. The family court denied Father's motion for an in-camera interview as being untimely pursuant to Rule 17 of the Rules of Practice and Procedure for Family Court, requiring in-camera interview motions be filed not less than twenty days before the hearing.

On February 24, 2025, the final hearing on the parties' petitions for modification began. However, the family court, sua sponte, had to shorten the hearing and entered an order continuing the remainder of the final hearing to April 2, 2025. The court noted that Father had approximately seventy minutes remaining, that Mother had approximately 110 minutes remaining, and that the GAL would be allotted time to present her evidence.

On February 26, 2025, the GAL filed a motion requesting the family court release to her the $2,800.00 Father deposited with the circuit clerk for the payment for her services and to further order the parties to pay the remaining balance of $900.00. On March 4, 2025, the family court entered an order requiring Father to make an additional deposit of $1,500.00 to the circuit clerk for anticipated GAL fees because the final hearing had not yet been completed.

On April 2, 2025, the family court held the last day of the final hearing. On April 3, 2025, counsel for Mother filed her updated invoice and a motion for attorney fees totaling $7,740.00. By final order entered on April 14, 2025, the family court denied Father's amended petition for modification in its Order Modifying Parenting Plan but Retaining Equal Custodial Allocation and ordered Father to pay Mother $7,000.00 for her attorney fees and costs.

In its order, the family court ultimately concluded that Father failed to meet his burden of proving a change in circumstances sufficient to warrant the modification of custody but determined that it needed to make minor modifications to the parenting plan for the best interests of the children. The court further noted that Mother withdrew her counter-petition at the beginning of the final hearing and reiterated its denial of Father's petition for the court to speak with the son as being untimely.

In support of its denial of Father's amended petition, the family court found that while Mother did intentionally spit on Father during a heated exchange in a parking lot a couple of years ago, Father failed to prove that Mother harassed him in person and to others.

4

The court also found that Father failed to prove his allegation that he often had the children more than 50% of the time; Father only proved that the son spent some extra nights with Father during the Fall of 2023 football season. The family court determined that Father proved his allegation that the son and Mother had a hostile relationship, but Father did not prove his remaining allegation that the son was in therapy because of it as Father did not call the child's therapist to testify. The court noted that a review of video footage clearly showed that the son was hostile towards Mother but did not show Mother being hostile towards the son and found that the son's behavior was unacceptable. The court found testimony of the parties' former marriage counselor, Dr. Yura, credible in explaining the son's behavior as it related to the effects of the parties' divorce. Based on the parties' dynamic, expert opinions, and the GAL's recommendation, the court modified the parenting plan from a 2/2/3 parenting schedule to a week on/week off schedule. The family court also made minor changes to the parties' decision-making authority regarding the children's participation in sports and religion. Finding that the child support guidelines yield Father's monthly child support obligation to be less than a 15% deviation from the previous amount, the court did not modify child support.

Regarding attorney fees, the family court found that "pursuant to West Virginia Code § 48-5-504, and in particular subsection (c)" attorney fees could be awarded based on one party unnecessarily incurring the fees for a litany of reasons and further, that "the relevant factors contained in *Banker v. Banker*, 196 W. Va. 535[, 474 S.E.2d 465] (1996) are analyzed herein." The family court reasoned that:

> Father sought sole decision-making rights in some major decision-making areas, and he requested to change the [son's] 50/50 custodial plan to one where [the son] resided primarily with him. [The son] is age 12, and based upon Father's request, a guardian ad litem was appointed to investigate the best interests of all three of the children. It was anticipated by the Court that [the son's] residential preference would be conveyed to the Court by the guardian ad litem; however, [the son] did not express a residential preference to the guardian ad litem. On February 11, 2025 after investigation, the guardian ad litem advised both counsel that she recommended the parties continue to share equal custody of all three children. . . . Based upon Father's request, the parties' parental fitness was evaluated by an expert, Dr. Baker, who on January 30, 2025 opined that the parties should have equal custodial time with the children.

As such, the family court concluded that "Mother incurring any attorney fees in the case was unnecessary," explaining the following:

> Despite [the son] not expressing a custodial preference to the guardian ad litem, the post-investigation recommendation of the guardian ad litem to continue equal custody, and the recommendation of the parental fitness

5

evaluator being to continue equal custody, no agreement on the substantive issues was reached during mediation, and the matter went to final, contested hearing. The court took evidence for approximately 7.5 hours. Father did not prevail, and the court temporarily and finally ruled that the parties' 50/50 custodial time division would not be altered nor would the joint decision-making rights of the parties be altered.

The family court found that Father did not prove his claims pertaining to his requested modification of custodial allocation. The court acknowledged that while "it did become clear that the parties struggle making joint decisions for the children, it would not benefit the children to remove either parent from that process and leave the other with the full decision-making power." The family court reasoned that the modifications made to the parenting plan were not changes that Father requested but noted that some of the changes were requested by Mother in her withdrawn petition. The court concluded that

Mother's counsel's hourly rate is reasonable for her level of experience in this geographical area; the amount of time spent on the case was commiserate with the level of conflict in the case; the long final hearing; and the fact that the discovery process was utilized support an award of attorney fees. Father's income exceeds Mother's income by approximately $9,000.00 per month, Mother's counsel assisted Mother in prevailing as Father's claims were successfully defended. Mother's attorney fees for the action were $7,740.00. Father is ordered to reimburse Mother the sum of $7,000.00 for attorney fees in full not later than October 31, 2025.

It is from this April 14, 2025, order that Father now appeals.

For these matters, we apply the following standard of review:

When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review the findings of fact made by the family court for clear error, and the family court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

Syl. Pt. 2, *Christopher P. v. Amanda C.*, 250 W. Va. 53, 902 S.E.2d 185 (2024); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders).

On appeal, Father raises two assignments of error. First, Father asserts that the family court abused its discretion in awarding attorney fees to Mother by erroneously finding that Mother met her burden for modification of the April 4, 2022, order because the record establishes that Mother did not pursue a counter petition for modification. This

6

argument lacks merit. While Father appears to contend that the family court's award of attorney fees was erroneously based in part on the court's "improperly stated" finding that Mother "met her burden for a modification" during the hearing, the written order entered contains no such statement. "It is a paramount principle of jurisprudence that a court speaks only through its orders," so "it is clear that where a [lower] court's written order conflicts with its oral statement, the written order controls." *Legg v. Felinton*, 219 W. Va. 478, 483, 637 S.E.2d 576, 581 (2006). Furthermore, "an award of attorney fees falls within the sound discretion of the family court and should not be disturbed on appeal absent an abuse of discretion." *Groves v. Ours*, No. 25-ICA-93, 2025 WL 2490440 (W. Va. Ct. App. Aug. 29, 2025) (memorandum decision) (citations omitted). Accordingly, we affirm the family court on this issue.

Next, in Father's second assignment of error, he asserts that the family court abused its discretion in awarding attorney fees to Mother because his petition to modify the April 4, 2022, order was sought in good faith. In support of his argument, Father claims that considering there was no vexatious, wanton, or oppressive purposes presented in his pursuit for modification, the family court's application of West Virginia Code § 48-5-504(c) to the facts in the case at bar did not support an award of attorney fees. Father further maintains that his petition was not unfounded given that the family court modified the April 4, 2022, order after the February 24, 2025, and April 2, 2025, final hearings on his petition for modification. We are unpersuaded by these arguments.

Father cites to our decision in *Jonpaul C. v. Heather C.*, 248 W. Va. 687, 889 S.E.2d 769 (Ct. App. 2023), in support of his argument. However, *Jonpaul C.* is distinguishable from the present matter. In *Jonpaul C.*, this Court found clear and reversible error in a family court's decision to deny a petition to modify a parenting plan in contravention of the expert testimony and the recommendations of the GAL, counselors, and therapists regarding the best interests of the parties' fifteen-year-old child, who had specifically stated his firm and reasonable preference to reduce his parenting time with his mother. We specifically noted that "the family court arbitrarily ignored, and failed to discredit or find uncredible, the expert testimony of the counselors/therapists and the recommendation of the GAL in rendering its decision." *Id.* at 696, 889 S.E.2d at 778. As such, we reversed the family court's award of attorney fees, concluding that the family court's decision, which was based solely on West Virginia Code § 48-5-504(c), was an abuse of discretion. *Id.* at 698, 889 S.E.2d 780. West Virginia Code § 48-5-504(c) provides the following:

> If it appears to the court that a party has incurred attorney fees and costs unnecessarily because the opposing party has asserted unfounded claims or defenses for vexatious, wanton or oppressive purposes, thereby delaying or diverting attention from valid claims or defenses asserted in good faith, the court may order the offending party, or his or her attorney, or both, to pay reasonable attorney fees and costs to the other party.

7

The family court in *Jonpaul C.* found that the mother, who earned approximately $3,345.00 per month more than the father, unnecessarily incurred attorney's fees and costs because the father filed a petition for modification of the parties' parenting plan based on "unfounded claims for vexatious, wanton, or oppressive purposes" without any further explanation. *Id.* at 693, 889 S.E.2d at 775. Consequently, this Court determined that "the family court failed to set forth *how* [the father's] petition for modification was unfounded, as well as what conduct of [the father] was vexatious, wanton or oppressive." *Id.* at 698, 889 S.E.2d 780 (emphasis added). As there was "no evidence that [father] [was] a vexatious, wanton, or oppressive litigant, or otherwise abused the process[,]" we found that "the family court's award of attorney's fees on such basis was an abuse of discretion." *Id.* Essentially, *Jonpaul C.* further illustrates that fee awards based solely on unsuccessful outcomes are inappropriate when the underlying legal determination is incorrect. *See also Jared M. v. Molly A.*, 246 W. Va. 556, 564, 874 S.E.2d 358, 366 (reversing an award of attorney fees after concluding that the family court erroneously found that there was no substantial change in circumstances in denying a petition to modify a parenting plan).

The present case is distinguishable from *Jonpaul C.* in two important ways. First, the family court did not act in contravention of the firm and reasonable preference of the child, or the recommendations of experts, counselors, or the GAL in denying Father's petition for modification. The court's order includes ample findings of fact and conclusions of law to support its reasoning for denying Father's petition for modification and its consideration of the evidence presented.

The other major distinction between the instant case and *Jonpaul C.* is that here, the family court did not solely rely on West Virginia Code § 48-5-504(c) as the basis for awarding attorney fees.[3] The court also explicitly addressed the *Banker* factors in its decision, which were delineated by the Supreme Court of Appeals of West Virginia ("SCAWV") as follows:

> In determining whether to award attorney's fees, the family law master should consider a wide array of factors including the party's ability to pay his or her own fee, the beneficial results obtained by the attorney, the parties' respective financial conditions, the effect of the attorney's fees on each party's standard of living, the degree of fault of either party making the divorce action necessary, and the reasonableness of the attorney's fee request.

Syl. Pt. 4, in part, *Banker v. Banker*, 196 W. Va. 535, 474 S.E.2d 465 (1996).

---

[3] Although the family court's application of West Virginia Code § 48-5-504(c) was unnecessary since the *Banker* factors are controlling in this instance, we find its application of the statute to be harmless error.

Here, the family court's order explained that an award of attorney fees was appropriate because Father earned approximately $9,000.00 per month more than Mother, Mother's attorney's fees were reasonable, the final hearing was held on two separate days and lasted more than seven hours, the discovery process was utilized, Father did not prevail, and the modifications made were not those requested by Father. The family court determined it unnecessary for Mother to incur *any* attorney fees in this case because despite the son not expressing a custodial preference to the GAL, the recommendations of the GAL and Dr. Baker to continue equal custodial allocation, and the parties' unsuccessful mediation, Father continued his pursuit for primary custody of the son.

Applying the well settled law in *Banker* to the instant matter compels the conclusion that the family court's award of attorney fees did not constitute a clear abuse of discretion. The family court's consideration of the disparity in the parties' incomes alone is a sound reason to award attorney fees. *See Cochran v. Cochran,* 230 W. Va. 580, 588, 741 S.E.2d 138, 146 (2013) (finding no abuse of discretion in awarding attorney fees based on disparate incomes of the parties despite both parties' ability to pay their own fees); *Landis v. Landis*, 223 W. Va. 325, 674 S.E.2d 186 (2007) (finding that the party with substantial income is in a better position to absorb costs of attorney fees); *Grose v. Grose*, 222 W. Va. 722, 671 S.E.2d 727 (2008) (finding no abuse of discretion in awarding attorney fees where one party had substantially more income and other party had a need for award of attorney fees). Based on the substantial difference in the parties' annual incomes alone, we find that it was within the sound discretion of the family court to award attorney fees to Mother.

Moreover, as we recently explained,

> [O]ur State's highest court has consistently held that family courts are afforded significant deference, and appellate courts are not positioned to act as a fact finder. *See, e.g., Porter v. Bego*, 200 W. Va. 168, 173, 488 S.E.2d 443, 448 (1997) ("We have repeatedly stated that we will accord great deference to findings of fact by a family [court]."); *Jacob H. v. Siera G.*, No. 24-ICA-147, 2024 WL 4787833, at *3 (W. Va. Ct. App. Nov. 14, 2024) (memorandum decision) (internal citations and quotations omitted) ("A family court's decision is entitled to significant deference."). *See also In re Tiffany Marie S.*, 196 W. Va. 223, 231, 470 S.E.2d 177, 185 (1996) (A reviewing court may not overturn a family court's finding simply because it would have decided the case differently).

*Julia R. v. Paul J.*, No. 24-ICA-406, 2025 WL 2238541, at *4 (W. Va. Ct. App. Aug. 6, 2025) (memorandum decision).

Accordingly, as the family court appropriately weighed and analyzed the factors set forth in *Banker* and is afforded substantial deference, we cannot conclude that the family

court abused its discretion or clearly erred in its decision to award attorney fees to Mother. Therefore, we affirm the family court's April 14, 2025, order.

Affirmed.

**ISSUED:** February 3, 2026

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White